UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| HAROLD B. HOLBROOK,<br>Administrator Of the Estate of<br>Monetta Faye Holbrook, Deceased<br>    Plaintiff<br><br>v.<br><br>DEBORAH S. DAVIDSON,<br>    Defendant | **MEMORANDUM OPINION**<br>Case No. 2:13cv00027<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

The plaintiff, Harold B. Holbrook, brings this wrongful death action on behalf of the estate of his deceased mother, Monetta Faye Holbrook. This matter is before the undersigned on the Defendant's Motion For Summary Judgment, (Docket Item No. 18), ("Motion"). The plaintiff has responded to the Motion, and the defendant has filed a reply. This matter is now ripe for disposition. Plaintiff has requested a hearing on the Motion. However, after reviewing the Motion, the plaintiff's Brief in Opposition and the defendant's Reply, and the arguments and representations contained therein, the court finds that the matter can be resolved without the benefit of a hearing. A jury trial in this matter is scheduled for February 4 and 5, 2014, before the undersigned. The action, including the Motion, is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1). Based on the arguments and representations presented, and for the reasons stated in this Memorandum Opinion, the Motion will be granted.

## I.   Facts

The parties are in agreement regarding the facts underlying this wrongful death action. In the late summer or early fall of 2007, Monetta Holbrook, ("Holbrook"), began working as a caretaker for Kathleen Seals, ("Seals"), at Seals's home in Big Stone Gap, Virginia. Seals lived with her daughter, Deborah Davidson, ("Deborah," "Davidson" or "defendant"), and Davidson's husband, Thomas Davidson, ("Thomas"), (collectively "Davidsons"), in the home owned by Deborah. (Docket Item No. 18-1 at 2). Holbrook's duties as a caretaker consisted of caring for Seals, sitting with her, assisting her with using the bathroom and cooking her meals. (Docket Item No. 18-1 at 3). Although Holbrook was not obligated to clean the home, she sometimes did so.  (Docket Item No. 18-1 at 10). The home consists of one main living level. (Docket Item No. 18-1 at 3-4). The home also has an attic, which is accessible by a set of pull-down stairs, as well as a basement, accessible by a stairway from the kitchen, as well as by an outside entrance. (Docket Item No. 18-1 at 4). At the top of the basement stairs is a landing with a vegetable bin. (Docket Item No. 18-1 at 7-8). There were four small dogs also living in the home, which roamed freely throughout. (Docket Item No. 18-1 at 10).

The Davidsons kept extra grocery items, like butter and soft drinks, in a refrigerator in the basement. (Docket Item  No. 18-1 at 13, 16; Docket Item No. 18-4 at 4). They made a habit of telling Holbrook that they would bring up anything from the basement that she might need during the day. (Docket Item No. 18-1 at 4; Docket Item No. 18-4 at 4). For instance, if the kitchen refrigerator ran out of butter or soft drinks, Deborah asked Holbrook to inform her so that she or

Thomas could bring the items up from the basement. Deborah warned Holbrook not to go down to the basement due to the steep stairs from the first day that Holbrook worked in the home. (Docket Item No. 18-1 at 4, 15; Docket Item No. 18-4 at 9). However, despite such warning, Holbrook used the stairs on several occasions to retrieve items from the basement. (Docket Item No. 18-1 at 4). When the Davidsons saw this occur, they repeated their warning to Holbrook not to use the stairs. (Docket Item No. 18-1 at 4). In any event, Thomas was at the home the vast majority of the time to assist Holbrook and could retrieve anything from the basement that she might need. (Docket Item No. 18-1 at 4).

On the morning of May 19, 2010, Holbrook arrived at the home at approximately 8:00 a.m. She spoke with both Deborah and Thomas, complaining of feeling dizzy and lightheaded. (Docket Item No. 18-1 at 15; Docket Item No. 18-4 at 3). She attributed the dizziness to her blood pressure. (Docket Item No. 18-4 at 3). Holbrook also complained of a pain in her arm and weakness in her knees. (Docket Item No. 18-4 at 3). Deborah went to work that day, and Thomas left the home to mow grass. (Docket Item No. 18-4 at 3). At approximately 2:45 p.m., Christy Jones, ("Jones"), Seals's granddaughter, came to the home to bring Seals some potato salad and to visit Holbrook, who was her aunt. (Docket Item No. 18-1 at 8; Docket Item No. 18-3 at 4). When Jones asked Seals where Holbrook was, Seals stated that she had gone home. (Docket Item No. 18-3 at 4). However, Jones noticed that the basement door was open. When she looked down into the basement, Jones saw Holbrook lying on the floor at the bottom of the stairs. (Docket Item No. 18-3 at 5). Holbrook was deceased. Jones called emergency services, and Officer W. Hollinger, an Investigator with the Big Stone Gap Police Department, responded to the home. (Docket Item No. 18-3 at 5; Docket Item No.

18-5 at 3). Officer Hollinger took photographs of the scene, completed a police report and contacted the medical examiner. (Docket Item No. 18-5 at 3, 5; Docket Item No. 18-6 at 2).

Officer Hollinger was unable to determine whether Holbrook was going up or down the stairs when she fell, nor was he able to determine the cause of the fall. (Docket Item No. 18-5 at 6). Officer Hollinger believes that it is possible that Holbrook's shoe came off, causing her to fall, or that she fell backwards from the top landing while accessing the vegetable bin. (Docket Item No. 18-5 at 7-8). Officer Hollinger stated that he does not find any one possible cause of the accident to be any more probable than any other. (Docket Item No. 18-5 at 9-10). Plaintiff Harold Holbrook and Van Holbrook, Holbrook's other son, similarly do not know what caused their mother to fall. Van Holbrook stated that based upon his conversations with others, he believes that she "slipped and fell on some steps." (Docket Item No. 18-2 at 9).

John Franklin Loehr, III, a Class A general building contractor since approximately 1986, and plaintiff's expert witness, stated in his deposition testimony that he measured the stairway in Davidson's home, took photographs of it and compared it with the International Residential Code, ("Code"). (Docket Item No. 20-3 at 5, 11, 14). Loehr stated that, due to defects in the stairway, it is very difficult to negotiate. (Docket Item No. 20-3 at 14). Loehr stated that the basement stairs are defective in three main areas. (Docket Item No. 20-3 at 15). First, the treads and risers on the stairs are not to Code, making the stairs steeper and the treads narrower than they should be. (Docket Item No. 20-3 at 15). Second, the staircase lacks a handrail, as required by Code. (Docket Item No. 20-3 at 17).

Finally, the stairs terminate in a manner resulting in a greater than three-eighths of an inch difference between the largest riser and the smallest riser, in violation of Code. (Docket Item No. 20-3 at 15). More specifically, Loehr stated that the last wooden tread is 18 and one-half inches off the floor. (Docket Item No. 20-3 at 23). He noted that there is a six-inch concrete block between this last wooden tread and the floor, leaving a 10- or 11-inch step. (Docket Item No. 20-3 at 23). He stated that the risers should have continued down to the concrete basement floor, and the steps should have continued between seven- and eight-inch risers on down until they met the floor, as required by Code. (Docket Item No. 20-3 at 23). Loehr stated that having a bigger step or a smaller step at the bottom is really difficult to negotiate. (Docket Item No. 20-3 at 23). Additionally, Loehr stated that the stairway is not fastened very well, and the concrete blocks at the bottom are loose. (Docket Item No. 20-3 at 24).

Dr. Maurice Nida, D.O., the Wise County Medical Examiner, performed a physical examination of Holbrook at Lonesome Pine Hospital. (Docket Item No. 20-4 at 5). Dr. Nida concluded that she died as a result of the fall. (Docket Item No. 20-4 at 6). More specifically, Dr. Nida stated that Holbrook died from an open skull fracture to the back of the head. (Docket Item No. 20-4 at 5). He further stated that the police report noted the presence of a steel pole at the bottom of the stairs. (Docket Item No. 20-4 at 5). He stated that Holbrook's injuries were "one hundred percent consistent" with her having struck her head on the pole, resulting in a sudden death. (Docket Item No. 20-4 at 6). Dr. Nida stated that, for that reason, he did not perform any further investigation into any potential contributing factors to her fall, such as a heart attack. (Docket Item No. 20-4 at 6). Dr. Nida concluded that Holbrook died as the result of a fall, but he could not state the cause

of the fall, as he did not witness it. (Docket Item No. 20-4 at 6).

II. *Analysis*

With regard to a motion for summary judgment, the standard of review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and … the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to the plaintiff on the defendant's Motion. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 233 (6th Cir. 1996).

The plaintiff alleges that Holbrook fell and died as a result of the dangerous

nature of the staircase. The plaintiff alleges that the defendant was negligent in failing to warn Holbrook of the dangerous stairs and/or failing to repair the dangerous conditions related to the stairs. On the other hand, the defendant argues that any alleged defect in the staircase was open and obvious, thereby requiring no warning. However, even assuming the alleged dangerous condition of the stairs was not open and obvious, both the defendant and her husband warned Holbrook on multiple occasions not to use the basement stairs, and they did so from the first day she began working in the home. Finally, the defendant argues that the plaintiff has failed to show that the allegedly dangerous and defective condition of the stairs proximately caused Holbrook to fall, resulting in her death.

A federal court exercising diversity jurisdiction, as here, is obliged to apply the substantive law of the state in which it sits, including its choice of law rules. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Here, Virginia is the forum state. In Virginia, liability for tort depends upon the law of the place of injury. *See Lachman v. Pa. Greyhound Lines, Inc.*, 160 F.2d 496, 500 (4th Cir. 1947); *C.I.T. Corp. v. Guy*, 195 S.E. 659, 663 (Va. 1938). In the case at bar, Holbrook was injured at the Davidsons' home, located in Big Stone Gap, Virginia. Therefore, this court must utilize the substantive law of Virginia. To assert a claim for negligence, a plaintiff must allege a legal duty owned by the defendant, a breach of that duty by the defendant, and an injury that was proximately caused by the breach. *See McGuire v. Hodges*, 639 S.E.2d 284, 288 (Va. 2007). In Virginia, owners and occupiers of property may be held liable for injuries caused to other persons by conditions on their premises. *See Tate v. Rice*,

315 S.E.2d 385, 388 (Va. 1984). The duties owed to a plaintiff depend upon her status on the premises, specifically, whether she is an invitee, a licensee or a trespasser. In Virginia, an invitee is defined as a person to whom the "landowner or occupier has extended an express or implied invitation to the visitor and the visitor enters pursuant to the invitation." *Bauer v. Harn*, 286 S.E.2d 192, 194-95 (Va. 1982). There is no dispute that Holbrook was an invitee in Davidson's home.

In Virginia, an owner or occupier of land must use ordinary care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety. *See Tate*, 315 S.E.2d at 388. Moreover, an invitee has the right to assume that premises are reasonably safe for his lawful use, in the absence of information to the contrary. *See Tate*, 315 S.E.2d at 388. While a landowner must give notice or warning of an unsafe condition which is known to him and unknown to an invitee, such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety. *See Tate*, 315 S.E.2d at 388 (citations omitted). The duty of an owner or occupier of a private residence to maintain his premises in a condition which is reasonably safe for an invitee does not extend to warning of, or removing, a danger that is open and obvious. *See Tate*, 315 S.E.2d at 388. Thus, the obviousness of the danger serves to eliminate any duty on the landowner's part to warn of or to remove the danger. *See Tate*, 315 S.E.2d at 388.

Additionally, in order to hold an owner liable for injuries sustained because of an alleged unsafe condition of the premises, whether open and obvious or not, it must be shown that such condition was the proximate cause of the injuries. *See Cannon v. Clarke*, 167 S.E.2d 352, 354 (Va. 1969) (citing *Hargrave's Adm'r v.*

*Shaw Land & Timber Co.*, 68 S.E. 278, 279 (Va. 1910); *State-Planters Bank & Trust Co. v. Gans*, 200 S.E. 591, 593 (Va. 1939); *Thalhimer Bros., Inc. v. Buckner*, 76 S.E.2d 215, 217 (Va. 1953)). A review of the briefs and the evidence presented by the parties persuades me that granting summary judgment in favor of the defendant is appropriate in this case. First, while the plaintiff has offered expert testimony regarding the alleged defects in the staircase, including its steepness, lack of a handrail and improper termination onto the basement floor, none of that matters if the plaintiff also cannot show that it was precisely these dangerous defects that caused the fall. The medical examiner who examined Holbrook's body concluded that she did, in fact, die as the result of a traumatic brain injury due to a fall, but he stated that he could not opine as to the cause of the fall, as he was not a witness to it. In fact, noone witnessed Holbrook fall. The only other person in the home at the time of the fall was Mrs. Seals, who thought Holbrook had simply gone home. Deposition testimony from Officer Hollinger also fails to clarify the cause of the fall. Hollinger stated that he was unable to determine whether Holbrook fell as she was coming up or going down the stairs. He stated that she might have fallen as the result of losing her shoe on the stairs, but he also stated that she could have fallen backwards from the landing at the top of the stairs while trying to retrieve something from the vegetable bin. Officer Hollinger stated that he did not find one or the other of these possibilities more probable than the other.

Similarly, Holbrook's son, Van Holbrook, stated in his deposition that he "assume[d] that [his mother] slipped and fell on some steps." However, he added that "nobody really seems to know what happened." (Docket Item No. 18-2 at 10). All of this being said, several possibilities exist as to the cause of Holbrook's fall.

She might have fallen due to the steepness of the stairs, the lack of a handrail or the improper termination at the bottom of the staircase. However, she also might have fallen because she lost her balance or stepped backwards while accessing the vegetable bin at the top of the stairs. Her shoe might have come off while ascending or descending the stairs, causing her to fall. She might have become dizzy or lightheaded while on the stairs, as she had complained of these things earlier that day. She could have simply lost her footing on the steps. She could have experienced a medical emergency of some sort that caused the fall. Any one of the four small dogs, who Deborah testified roamed freely around the home, could have run under her feet or somehow managed to trip her, causing her to fall. While Holbrook's death is a tragedy, allowing the case to go to a jury trial without any evidence as to the cause of her fall would call for pure conjecture and speculation. This I cannot do. In Virginia, "where the evidence shows that any one of several things may have caused the injury, for some of which the defendant is responsible and for some of which he is not, and leaves the real cause to speculation and conjecture, then the plaintiff has failed to establish his case." *Williamsburg Shop, Inc. v. Weeks*, 110 S.E.2d 189, 192 (Va. 1959).

In summary, even assuming that the basement stairway constitutes a dangerous condition, which was not open and obvious, and even assuming, contrary to their deposition testimony, that the Davidsons failed to warn Holbrook of such dangerous condition, because the plaintiff has failed to provide evidence that the dangerous character of the stairway, in fact, caused Holbrook to fall, the plaintiff has failed to meet his burden with regard to proximate causation on his negligence claim, and the defendant is entitled to summary judgment as a matter of law.

### III. *Conclusion*

Accordingly, the defendant's Motion is granted. An appropriate judgment will be entered.

DATED: This 15th day of January, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE